# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00349-CR

**Charles A. Lott, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
## NO. D-1-DC-10-904038, THE HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Charles A. Lott of two counts of aggravated robbery with a deadly weapon. *See* Tex. Penal Code Ann. § 29.03 (West 2011). The jury further found the enhancement paragraphs of the indictment, alleging two previous sequential felony convictions, to be true and assessed his punishment at confinement for 30 years in the Institutional Division of the Texas Department of Criminal Justice on each count. *See id.* § 12.42(d) (West Supp. 2011). Lott appeals, raising three points of error. We affirm the judgments of the trial court.

## BACKGROUND

During the early morning hours of December 23, 2009, Charles A. Lott entered a local Austin "Speedy Stop" convenience store along with another male who was wearing a plastic bag covering the lower part of his face. Lott came around the counter, gun in hand, and ordered the store employee at gunpoint to give him the cash from the register. When the employee took too long

opening the register, Lott struck him repeatedly in the head with the gun, verbally threatening, "Give me the money or I'll blow your brains out." At that point, the customer checking out when Lott entered the store—a local cab driver who was purchasing gas for her cab—ran to the bathroom at the back of the store and locked herself inside. Lott followed, kicking in the door. He grabbed the money in her hand and pulled at her clothes asking "where the money was." When she told him she had no more money, Lott took the keys to her cab from her jacket pocket and turned around and left.

Both the store employee and customer subsequently identified Lott from a six-photo lineup.[1] Authorities eventually arrested Lott. Lott admitted to investigators that he committed the robbery, but claimed to have used a pellet gun during the offense. He further claimed that the man who committed the robbery with him had, in reality, forced him to commit the robbery. Lott told investigators that he owed the man money for drugs and, when he demanded payment and Lott did not have the money, the man forced him to participate in the robbery.[2]

---

[1] Neither was able to identify the second male because of the plastic bag covering the lower half of his face.

[2] Lott testified that he sought out his companion in order to purchase crack cocaine from him. After Lott gave him $30 in exchange for two "stones" of cocaine, the two drove around for several hours smoking cocaine and getting high. However, the two consumed more than the amount Lott had purchased. Eventually, Lott had smoked between 60 and 80 dollars worth of cocaine. The two then argued about Lott's drug debt. Lott understood that he was obtaining the additional drugs on credit, but then his companion wanted immediate payment. Lott, having no money, could only promise future payment. According to Lott, his companion refused to wait. He drove them to the convenience store, stopped by a nearby dumpster, pulled a knife on Lott, and told Lott that if he did not go in the store and get his money he was "going to gut [him] like a fish."
Lott later testified that after the robbery his companion gave him additional cocaine and told him that they were "straight," meaning Lott had discharged his debt.

At trial Lott testified in his own defense, repeating to the jury the claims that he had given to law enforcement—that he used a pellet gun, not a real gun, during the robbery[3] and that he was forced by his companion to participate in the robbery. The jury convicted Lott on both counts of aggravated robbery with a deadly weapon and assessed his punishment at 30 years' imprisonment for each count. The trial court sentenced Lott in accordance with the jury's verdicts.

## DISCUSSION

On appeal, Lott complains of prosecutorial misconduct and improper jury argument. For the reasons that follow, we overrule his points of error and affirm the convictions and sentences.

### *Prosecutorial Misconduct*

In two points of error, Lott complains about prosecutorial misconduct. In his first point of error he argues that the prosecutor engaged in prosecutorial misconduct when she questioned him during cross-examination about the underlying details of his prior robbery conviction. In his third point of error, Lott asserts that the prosecutor engaged in prosecutorial misconduct when she injected her personal opinion into her closing jury argument.

After a detailed discussion addressing Lott's objections to impeachment with his prior conviction for robbery, the trial court ruled that the State could not go into the underlying facts of the robbery, limiting the State to the conviction itself and the affirmative deadly weapon finding

---

[3] Both the store employee and customer testified that they believed the gun to be a real firearm. In fact, the store employee was ex-military and "very familiar with firearms." He identified the gun as a nine millimeter Glock with a rubber handle and stated that there was "no doubt" in his mind that the weapon was a real gun.

3

reflected in the judgment. After Lott testified that he participated in the instant robbery only because his companion forced him to, the prosecutor asked during cross-examination, "So your prior robbery conviction, did somebody force you on that one?" Lott objected based upon Rules 402, 403, 404(b), 608, and 609 of the Texas Rules of Evidence. The trial court sustained the objection and instructed the jury to disregard the prosecutor's question. Lott did not request a mistrial.

During closing argument of the guilt-innocence phase, the prosecutor argued that Lott was lying about being forced to participate in the instant robbery, stating:

> He is not a credible witness and he is lying. He is absolutely lying.
>
> And just because he admitted that he did drugs doesn't mean that you can believe all of his story. And the reason why the prosecution didn't put in his statement that was given at the robbery is because we didn't believe it. I didn't believe it then.[4]

---

[4] The State indicates that the prosecutor was responding to defense counsel's closing argument concerning the recorded statement taken by the detective and its consistency with Lott's trial testimony. Defense counsel argued, in part:

> To this day, [Lott] has not had an opportunity to watch the video recorded interrogation by Detective Tejirina, to listen to it. If this was an elaborate falsehood that he concocted to beat the wrap [sic] for aggravated robbery, don't you know that you would have been presented with Detective Tejirina's testimony, that you would have been shown the video recording of that interrogation pointing out all the discrepancies.

Counsel later argued:

> This was not an 11th hour defense that was concocted to attempt to mislead a jury into finding a man not guilty. This was something that actually happened. He told Detective Tejirina about it. He told you about it. He was cross examined at length about it. And yet, there were no contradictions in his testimony. You never saw the video recording of that interrogation. You never heard from Detective Tejirina.

4

Lott objected "to the statement of personal opinion" in the prosecutor's argument. The trial court sustained the objection and, although Lott did not request a jury instruction, instructed the jury about the proper scope of jury argument and the prohibition against attorneys arguing their personal opinions about the evidence. Lott did not move for a mistrial.

Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010) (citing *Ford*, 305 S.W.3d at 532). To preserve a complaint for appellate review, a party must have presented a specific and timely request, motion, or objection to the trial court and, further, must have obtained an adverse ruling. Tex. R. App. P. 33.1(a); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd). A defendant must secure an adverse ruling.[5] *See Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007); *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004); *see also* Tex. R. App. P. 33.1(a)(2). Most complaints are subject to forfeiture by failure to comply with Rule 33.1(a) of the Rules of Appellate Procedure. *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

---

[5] In the context of jury argument, the court of criminal appeals has explicitly held that to preserve error a defendant must contemporaneously object to the statement, request an instruction that the jury disregard the statement, and move for a mistrial. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *see Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010), *cert. denied*, 131 S.Ct. 905 (2011). A defendant's failure to object to a jury argument, or failure to pursue an adverse ruling to his objection to the jury argument, forfeits his right to complain about the jury argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

Here, Lott has no adverse rulings about which to complain. In both instances, the trial court sustained his objection and gave a jury instruction. Both times, Lott failed to request a mistrial. By failing to pursue his objections to an adverse ruling, Lott forfeited his right to complain about prosecutorial misconduct on appeal.

Moreover, Lott's trial objection to the prosecutor's purportedly improper cross-examination question was based upon the inadmissibility of the evidence under the Rules of Evidence. His trial objection to the prosecutor's improper jury argument was based upon the erroneous injection of her personal opinion into jury argument. In neither instance did Lott complain about prosecutorial misconduct. Prosecutorial misconduct is an independent basis for an objection that must be specifically urged in order for error to be preserved. *Temple v. State*, 341 S.W.3d 572, 603 n.10 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see* Tex. R. App. Proc. 33.1(a).

Further, to properly preserve error for appellate review, the complaint raised on appeal must comport with the complaint made at trial. *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009). The objections Lott raised at trial—inadmissibility of evidence and improper jury argument—do not comport with his complaints of prosecutorial misconduct on appeal.

For the above reasons, we find that Lott failed to properly preserve error as to these complaints and therefore has waived review of any alleged prosecutorial misconduct. Accordingly, we overrule his first and third points of error.

*Jury Argument*

In his second point of error, Lott asserts that the trial court erred in overruling his objection to the prosecutor's statement during jury argument concerning the availability of the defense of duress. During jury argument the State argued to the jury:

> And if you find that his testimony -- if you find that his testimony was believable, that he did this because he was threatened by the other robber and he was in imminent fear of serious bodily injury or death and that he did this because of that, then he's not guilty of all offenses. Now the State submits to you that the duress defense does not apply in this case. He placed himself in this situation according to his own testimony. There is an instruction or there is a part of the law is that you can't place yourself in the situation and still claim duress.

Lott objected to that argument as a misstatement of the law as contained in the court's charge. The trial court overruled the objection. Lott maintains that the prosecutor's statement that "you can't place yourself in the situation and still claim duress" was a misstatement of the law because the defense of duress requires the actor to have intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion. Specifically, he complains because the prosecutor: (1) failed to indicate that the defense of duress was unavailable only if Lott "intentionally, knowingly, or recklessly" placed himself in the situation likely to subject him to compulsion, and (2) referred to Lott placing himself in "the situation" instead of "a situation in which it was probable that he would be subjected to compulsion." Lott argues that omitting these two "critical elements" of the defense of duress constituted a misstatement of the law.

A prosecutor may quote or paraphrase the jury charge so long as the prosecutor does not misstate the law or present a statement of law contrary to that presented in the charge. *Whiting*

7

*v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990).  Here, a comparison of the court's jury charge with the complained-of argument shows that the prosecutor did not assert a legal proposition contrary to the court's charge or misstate the law.  The State simply paraphrased the law in arguing that the defense of duress was unavailable to Lott based upon his own conduct.  Because the prosecutor's argument was not a misstatement of the law or contrary to the jury charge, the trial court did not err in overruling Lott's objection to this portion of the prosecutor's closing argument.  Accordingly, we overrule his second point of error.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   May 4, 2012

Do Not Publish